**STATE of Tennessee, Appellee,**

v.

**Kenneth ADKINS, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

March 5, 1990.

R. Wayne Culbertson, Gilley & Culbertson, P.C., Kingsport, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Janice Bossing, Asst. Atty. Gen., Nashville, R. Jerry Beck, Asst. Dist. Atty. Gen., Blountville, for appellee.

O'BRIEN, Justice.

Defendant was convicted on two (2) counts of aggravated sexual battery in the Sullivan County Criminal Court. His conviction was affirmed by the Court of Criminal Appeals and an appeal to this Court was granted.

■ He has raised three (3) issues here by the first of which he questions the trial court's action in overruling a motion for acquittal in light of certain comments made by the judge that the proof did not support the findings of guilt beyond a reasonable doubt by the jury.

In support of his argument defendant has excerpted from the record certain remarks made by the trial judge at the conclusion of the sentencing hearing. The judge suggested that he might have a reasonable doubt about the credibility of defendant's step-daughter who had made the charges against him. The child was about nine years of age when the incident purportedly occurred which led to Mr. Adkin's conviction. She was about eleven years old at the time of trial. The marriage between her mother and step-father had been stormy. They were in the midst of a bitterly contested divorce proceeding about the time the charges were preferred against defendant. The trial judge speculated that the mother was capable of using the child, although the child said the defendant had done the things she described. His comments consumed eight (8) pages of the record at the sentencing hearing and included his reflections on what action he might take if he were sitting as a thirteenth juror.

The comments of the trial judge seem to have been motivated by the possibility of someone having manipulated the child's testimony as well as the delay in reporting, and the timing of the charges, coinciding as it did with the filing of the divorce action. He found fault with the medical testimony on the issue of penetration and the fact that the child had cried while on the witness stand. He also expressed some concern about the prevalence of publicity about child molestation. He speculated about numerous things but concluded that a rational trier of fact could have found the defendant guilty upon the evidence if they accredited the testimony of the child. It is obvious that in his speculation he considered facts other than the credibility of the witness.

We have read this record carefully. The testimony of the child victim was straightforward and emphatic about the sexual acts committed by defendant. She described the events clearly and without hesitation after an early episode of emotional distress. There was no indication in her testimony that any part of it had been suggested to her by her mother or anyone else. A strong argument was made in reference to the child recanting the charges against defendant prior to trial and telling one or more people that they were not true. However, she explained these matters, evidently to the satisfaction of the jury, that she was either frightened or embarrassed when interviewed by these persons. Some moment was made of the fact that she did not tell her mother the sexual advances had occurred until eight or ten months after the event. However, on cross-examination she testified she had told her grandmother shortly after the incidents occurred. Her grandmother disbelieved her and did not inform her mother. This seems to us to be some corroboration of the truth of her statements.

■ We are satisfied that the evidence meets the requirements of the law as it exists in this State. When the sufficiency

of the evidence is challenged, the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Johnson*, 762 S.W.2d 110, 116 (Tenn.1988); T.R.A.P. 13(e). The State is entitled not only to the strongest legitimate view of the evidence but to all reasonable inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978).

We note that the Court of Criminal Appeals has cited an earlier decision of that court as authority for the statement that when a defendant chooses to offer proof after the denial of a motion for judgment of acquittal, there is a waiver. That of course is true. However, Tennessee Rule of Criminal Procedure 29(a) provides that if a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right. The defendant did so in this case and renewed his motion for judgment of acquittal at the close of all the evidence, as he had a right to do. Further, he made a motion for judgment of acquittal after the discharge of the jury in accordance with Tenn.R.Crim.P. 29(c) and it is the denial of this motion of which he complains. Nonetheless, we have found the foregoing issue without merit as we have stated heretofore.

Defendant submits he was entitled to a mistrial and a new trial because of the highly emotional and distraught testimony and conduct of the prosecuting witness.

Shortly after the young witness was placed on the stand she was asked to relate the circumstances of the offense and began to cry. In response to the District Attorney General's inquiries if she was okay, she said several times, "I can't" and continued to cry. A recess was requested and the jury was removed from the courtroom. After considerable discussion between court and counsel it was agreed it was between two to four minutes before the jury was sent out of the courtroom. The jury and the witness remained out of the courtroom during the course of this discussion. The court took a noon recess and reconvened at 1:15 p.m. We do not believe the behavior of the witness was so prejudicial that the defendant could not receive a fair trial. The trial court took immediate steps to remove the jury from the scene when it occurred. The granting of a mistrial is within the discretion of the trial court. A reviewing court will not disturb that action absent a finding of abuse of that discretion. *State v. Freeman*, 669 S.W.2d 688, 692 (Tenn.Cr.App.1983). The issue is without merit.

Defendant makes the inquiry here on whether the thirteenth juror rule should be reinstated and some guidelines established to assist the trial judge in determining whether a new trial should be granted rather than relying on the sufficiency of the evidence rule provided in T.R.A.P. 13(e).

This issue was not raised in the Court of Criminal Appeals. That court considered the matter sua sponte, strongly stating preference for the thirteenth juror rule while recognizing the duty to adhere to current case law promulgated by this Court, divesting trial courts from thirteenth juror responsibilities.

In 1978, the United States Supreme Court held in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that principles of double jeopardy preclude a retrial of a defendant once a reviewing court has found the evidence to be legally insufficient to support his or her conviction. The holding in *Burks* was held to be applicable to State proceedings in *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

In response to *Burks* and *Greene*, this Court abandoned the thirteenth juror rule in criminal cases. See *State v. Cabbage*, supra; *Overturf v. State*, 571 S.W.2d 837 (Tenn.1978); Rule 13(e), T.R.A.P. In *Cabbage*, we indicated that the practice under the thirteenth juror rule whereby a trial judge could set aside a jury verdict upon

grounds of preponderance alone and direct a retrial of the action, without entering judgment of acquittal, could no longer be followed in criminal cases. 571 S.W.2d at 836.

In *State v. Johnson,* 692 S.W.2d 412, 413 (Tenn.1985), this Court observed that subsequent to the decisions in *Cabbage* and *Overturf,* the United States Supreme Court clarified the holding of *Burks* in *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), holding that retrial after the reversal of a conviction by *an appellate court,* based upon the weight, rather than the legal sufficiency, of the evidence, does not constitute double jeopardy. Noting that abandonment of the thirteenth juror rule was unnecessary from a constitutional standpoint the court concluded that the rule should not be reinstated as a part of Tennessee criminal procedure, reasoning as follows: (Emphasis supplies).

> "The distinction between the 'weight' of the evidence and the 'legal sufficiency' of the evidence has little substance in criminal cases, where the State has the burden of proving the defendant's guilt beyond a reasonable doubt. It is difficult to accept the proposition that a trial judge can reasonably determine that the evidence is legally sufficient to support a finding of guilt beyond a reasonable doubt but that such a verdict is against the weight of the evidence. We find the weight of the evidence standard to be difficult, if not impossible, to apply rationally and uniformly in criminal cases."

There was a minority dissent in *Johnson* in which it was reasoned that after *Tibbs v. Florida,* supra, the constitutionality of the thirteenth juror rule was firmly established by the United States Supreme Court. The dissenting opinion disagreed with the majority view that the distinction between the weight of the evidence and the legal sufficiency of the evidence had little substance in criminal cases. Based largely on the text of *Tibbs,* it concluded that the interest of justice required the reinstatement of the thirteenth juror rule in criminal cases in this State.

There is little room for doubt, under the authorities cited in the *Johnson* dissent, that the thirteenth juror rule passes constitutional surveillance. However, as a practical matter we are of the opinion the course taken by the majority in that case is the appropriate one. In doing so we observe that the *Tibbs* opinion was the result of the reasoning of a bare five-four majority. We can do little better than paraphrase the dissent in *Tibbs* with due apologies to Justice Bryon White for adapting the language of his opinion to the exigencies of this case.

To sustain the convictions in this case the prosecution was required to establish that the evidence was sufficient under constitutional standards, *Jackson v. Virginia,* supra, and procedural rules, T.R.A.P. 13(e). Had the case been set for retrial under the weight of the evidence rule the trial court would have held in substance that the prosecution failed to present evidence adequate to sustain the conviction. Hypothetically, if the State presented the same evidence at a second trial the assumption must be made that once again reversal of the conviction would be required. If the State presented no new evidence, the defendant would have no new or additional burden to meet in successfully presenting a defense. Thus, the only point of any second trial would be to allow the State to present additional evidence to bolster its case. If such evidence were not available re-prosecution could serve no purpose other than harassment.

This scenario certainly has constitutional overtones. The *Johnson* dissent fails to explain why the State should be allowed another trial where its proof has been held inadequate under weight of the evidence standards when it would not be granted if it was found inadequate under legal sufficiency standards. In both cases the State has failed to present evidence sufficient to sustain the conviction beyond a reasonable doubt. The interest of the State in overcoming the evidentiary insufficiencies of its case would seem to be exactly the same under either theory.

In *Burks,* supra, the United States Supreme Court reiterated the principle which is involved:

"The double jeopardy clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The clause does not allow 'the State ... to make repeated attempts to convict an individual for an alleged offense,' since '[t]he constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" (Citations omitted).

The jury in this case was properly instructed by the trial judge: They were told "you are the exclusive judges of the credibility of the witnesses and the *weight* to be given to their testimony. If there are conflicts in the testimony of different witnesses, you must reconcile them if you can, without hastily or rationally concluding that any witness has sworn falsely; for the law presumes that all witnesses are truthful. In forming your opinion as to the credibility of a witness, you may look to the proof, if any, of his or her general character, the evidence, if any, of the witness' reputation for truth and veracity, the intelligence and respectability of the witness, his or her interest or lack of interest in the outcome of the trial, his or her feelings, his or her apparent fairness or bias, his or her means of knowledge, the reasonableness of the testimony, the witnesses appearance and demeanor while testifying, contradictory statements as to material matters, if any are shown, and all of the evidence in the case tending to corroborate or to contradict the witness." (Emphasis supplied.)

It must be assumed that the jury followed those instructions of the trial judge. Together, in the sanctity of the jury room, they discussed the evidence and presumably debated the credibility of the witnesses and resolved that the weight, as well as the sufficiency, of the evidence tended to the guilt of the defendant. There is nothing in the history of the law to indicate the legal training and background of a trial judge endows him with some greater perspicacity to assess the credibility of witnesses than twelve jurors from assorted backgrounds whose education and/or experience may far better equip them to make such an assessment.

Tenn.R.Crim.P. 29 provides that the Court on motion of a defendant or of its own motion *shall* order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. The rule is the result of the study and combined thinking of a group of people whose legal training and ability produced a progressive and viable procedure to apply in criminal trials. It is a good rule. If the trial judge finds the evidence is insufficient to sustain a conviction he *shall* order the entry of a judgment of acquittal. If he finds the evidence legally sufficient to support the verdict it is his duty to approve the verdict of the jury. We see no reason to reinstate a standard which we have found to be difficult, if not impossible, to apply rationally and uniformly in criminal cases. *State v. Johnson,* supra at 413. (Emphasis supplied.)

The judgment of the trial court is affirmed. Costs are taxed against the defendant-appellant.

HARBISON and COOPER, JJ., and McLEMORE, Special Justice, concur.

DROWOTA, C.J., concurs in part, dissents in part.

FONES, Justice, concurring.

Chief Justice Drowota concurs in all of the issues dealt with in the majority opinion except the 13th juror rule. I would restore that rule for the reasons expressed in dissent, in *State v. Johnson,* 692 S.W.2d 412 (Tenn.1988).