## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT JACKSON

Assigned on Briefs March 31, 2021

## STATE OF TENNESSEE v. DERIOUS GRANDBERRY

**Appeal from the Criminal Court for Shelby County**
**No. 17-00443          John Wheeler Campbell, Judge**

_____

**No. W2019-01872-CCA-R3-CD**

_____

The Defendant, Derious Grandberry, was convicted at trial of carjacking and aggravated robbery. He received an effective sentence of twenty years in confinement. On appeal, the Defendant argues that the evidence was insufficient to convict him of the offenses, that the trial court erred by failing to weigh the evidence itself as the thirteenth juror, that the trial court erred in allowing the State to admit the victim's photographic lineup identification of him into evidence, and that the trial court abused its discretion by imposing the maximum sentence. After review, we affirm the trial court's judgments.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert Golder (on appeal), and John Dolan (at trial), Memphis, Tennessee, for the appellant, Derious Grandberry.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jamie Kidd, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

The Defendant was convicted of robbing the victim, Mr. Thomas Beabout, outside of his Shelby County residence and stealing his vehicle. The trial evidence showed that the victim arrived at his residence at approximately 9:00 p.m. on September 14, 2016, at

which time he noticed a man watching him from behind a dumpster in his neighbor's yard. The victim exited his vehicle and asked, "What are you doing?" Two men approached the victim, one from the front and one from the rear, and demanded his possessions. The man who approached from the rear told the other man to kill the victim if the victim said anything.

The victim identified the Defendant as the man who approached him from the front in a photographic lineup, and he identified another individual as being involved in a separate photographic lineup. At trial, when the victim was asked whether he could identify the Defendant in the courtroom, the victim replied, "No, not right now." The prosecution asked the victim to look again, and the victim replied, "Yes, that gentleman in the blue shirt looks familiar," identifying the Defendant. The Defendant objected on the ground that the additional probing by the State was inappropriate, and the prosecutor explained that she asked the additional question because she saw that the witness was not looking in the Defendant's direction. The trial court overruled the Defendant's objection. After the bench conference, the State asked if the individual the victim identified was one of the people who robbed him that night, and the victim responded affirmatively. On cross-examination, the victim explained that he at first could not identify the Defendant at trial because his view of the Defendant was obstructed.

The State then questioned the victim about an identification he made of the Defendant in a photographic lineup after the robbery. The victim testified that a few days after the robbery, a detective provided him with a photographic lineup. The victim testified that he identified an individual in the photographic lineup and that he marked the individual on the document. The Defendant objected, arguing that there was no foundation for the questioning and that the evidence was hearsay because it contained the following statement at the bottom of the page:

Who: No.

What: Had a gun pointed at me[.] Told me to give him everything.

The trial court overruled the Defendant's foundation objection and concluded that the victim could testify about the document if he identified it. The parties proceeded by covering the statement at the bottom of the document when presenting it to the jury and providing a redacted copy at a later time. The victim confirmed that the document presented to him at trial was the photographic lineup he saw five days after the crime, that he initialed it, that he circled a photograph in the array, and that nobody told him which photograph to circle. The victim testified that he did not know the Defendant and had never seen him prior to the robbery.

According to the victim, it appeared that the Defendant wielded a gun during the robbery. The Defendant took the victim's driver's license and $250 in cash from the victim's pockets. The individuals then drove away in the victim's vehicle. The victim testified that he never got "a good . . . [look] at" the second man and did not see whether he had a gun, but the victim believed the other man had a gun based on the man's instructions to the Defendant to kill him if he said anything. On cross-examination, the victim stated that he informed law enforcement in a statement that one of the men possessed a gun. The victim described the statement as incomplete but truthful and indicated that he left out information about the man other than the Defendant. The victim testified that he informed law enforcement that both the Defendant and the other man had guns in an initial report. The victim agreed he told someone that the Defendant had short, curly dreadlocks. When asked on cross-examination, "Are those short curly dreadlocks on that man you have identified," the victim replied, "I don't know."

According to the victim, his mother received a telephone call a few hours after the incident informing her that the police had recovered his vehicle. The victim noticed that his vehicle had a dent in it that was not there before the crime and that the front end was loose. The victim testified that approximately $100 in change was missing from the vehicle. On cross-examination, he agreed that he had testified in a separate hearing that the bag contained about $40 or $50 in change. The victim explained that he was sure the amount was more than that and that the lower estimate given in his prior testimony was a "light guess."

Memphis Police Department ("MPD") Officer Patrick Meads began looking for the stolen vehicle on September 14, 2016, while on patrol after receiving information from dispatch. Officer Meads located the vehicle at around 11:00 p.m., 5.6 miles away from the victim's residence and 0.8 mile away from an address associated with the Defendant. Officer Meads's bodycam recorded his discovery of the vehicle. An inspection of the vehicle revealed that the keys were in the ignition and that the vehicle was still running. Officer Meads called for a tow company and notified dispatch and an officer from a neighboring precinct. On cross-examination, Officer Meads testified that the vehicle had not been reported stolen on a national database for stolen vehicles used by the MPD when he located the vehicle. He testified that he did not approach the residence in front of which the vehicle was parked out of concern for his safety. Officer Meads agreed that it was possible his bodycam video did not reflect the accurate date or time.

MPD Officer Adam Pickering processed the vehicle at the city lot, where he photographed the vehicle and dusted its exterior for fingerprints. He found a partial palm print on the outside of the front passenger door. MPD Latent Prints Unit Officer Nathan Gathright examined the palm print taken from the stolen vehicle and found that it matched Shelby County Sheriff's Office number 418038, a number the parties stipulated

as identifying fingerprint evidence associated with the Defendant. On cross-examination, Officer Gathright testified that the minimum number of matching points allowed for a positive identification by his department was seven and that he stopped counting when he reached twenty-four matching points.

The jury found the Defendant guilty of carjacking and aggravated robbery, and it found the Defendant not guilty of employing a firearm during the commission of or attempt to commit a dangerous felony. The trial court sentenced the Defendant as a Range II offender to concurrent terms of twenty years for each conviction. The Defendant filed a motion for new trial, which was denied by the trial court following a hearing. This appeal followed.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends the evidence was insufficient to support his convictions for carjacking and aggravated robbery. Reviewing the sufficiency of the evidence supporting a criminal conviction requires this court to first "examine the relevant statute(s) in order to determine the elements that the State must prove to establish the offense." *State v. Stephens*, 521 S.W.3d 718, 723 (Tenn. 2017). Next, we determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 724 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). If the evidence is insufficient to support the finding of guilt beyond a reasonable doubt, the finding of guilt "shall be set aside." Tenn. R. App. P. 13(e). Once a defendant has been convicted, the presumption of innocence is replaced with a presumption of guilt on appeal. *Turner v. State*, 394 S.W.2d 635, 637 (Tenn. 1965). To overcome a presumption of guilt on appeal, the defendant bears the burden of showing the evidence presented at trial was "insufficient for a rational trier of fact to find guilt of the defendant beyond a reasonable doubt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) (citing *State v. Patton*, 593 S.W.2d 913 (Tenn. 1979)).

On appeal, the State "is entitled to the strongest legitimate view of the trial evidence and all reasonable and legitimate inferences which may be drawn from the evidence." *State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999); *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This court may not reweigh or reevaluate the evidence, because "[q]uestions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Id.* at 236 (citing *Bland*, 958 S.W.2d at 659). After a guilty

verdict has been entered, the testimony of the State's witnesses is accredited, and all conflicts in the testimony are resolved in favor of the theory of the State. *State v. Nichols*, 24 S.W.3d 297, 301 (Tenn. 2000) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).

A defendant's guilt may be supported by direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). Whether the evidence underlying the defendant's conviction at trial was direct or circumstantial, the same standard of review applies. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Carjacking is "the intentional or knowing taking of a motor vehicle from the possession of another by use of" force or intimidation. T.C.A. § 39-13-404(a). In the context of this case, aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," *see* T.C.A. § 39-13-401(a), that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1).

The Defendant challenges the sufficiency of the evidence in part by arguing that the evidence failed to establish his identity as one of the perpetrators. Identity is an essential element of every crime, *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015), and it is a question of fact for the jury. *Id.* (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). To resolve questions of fact, including the identity of the perpetrator, "'the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)). Circumstantial evidence may establish a perpetrator's identity. *See Bell*, 512 S.W.3d at 198-99.

When viewed in the light most favorable to the State, the evidence was sufficient to support the Defendant's convictions for carjacking and aggravated robbery. On September 14, 2016, when the victim arrived at his residence, he noticed a man observing him from behind a dumpster in his neighbor's yard. The victim exited the vehicle, and the Defendant approached him from the front while another man approached him from behind. The Defendant wielded what appeared to be a gun, demanded the victim's belongings, and then took the victim's driver's license and $250 in cash from the victim's pockets. The Defendant and his accomplice stole the victim's vehicle and cash in the form of change that was inside the vehicle. The victim identified the Defendant as the man who approached him from the front in a photographic lineup. Law enforcement

found the vehicle parked but still running 0.8 mile from an address associated with the Defendant and discovered the Defendant's palm print on the vehicle. This evidence supports the Defendant's identity as one of the men who robbed the victim and stole his vehicle. *See Bell*, 512 S.W.3d at 198.

The Defendant lodges several other arguments attacking the sufficiency of the evidence, namely, that the victim's testimony was not credible, that the victim's testimony should be disregarded by application of the rule of cancellation, and that the evidence presented at trial was merely circumstantial. The Defendant challenges the credibility of the victim's testimony regarding his identification of the Defendant, the amount of change that was stolen from his vehicle, and whether one or two of the robbers had guns. However, the issue of the victim's credibility was resolved by the jury at trial, and we do not reweigh it on appeal. *See Evans*, 108 S.W.3d at 237; *Nichols*, 24 S.W.3d at 301.

Regarding the rule of cancellation, Tennessee courts have recognized that "'contradictory[,] sworn statements made by a witness as to the same fact can cancel each other out.'" *State v. Doyle Wayne Mason, Jr.*, No. E2019-00174-CCA-R3-CD, 2020 WL 5015903, at *25 (Tenn. Crim. App. Aug. 25, 2020), *perm. app. denied* (Tenn. Jan. 14, 2021) (quoting *State v. Caldwell*, 977 S.W.2d 110, 118 (Tenn. Crim. App. 1997)). Thus, the rule of cancellation "addresses circumstances in which 'the proof of a fact lies wholly with one witness, and he both affirms and denies it,' resulting in no 'evidence at all to prove the fact.'" *Id.* (quoting *State v. Matthews*, 888 S.W.2d 446, 449-50 (Tenn. Crim. App. 1993)). This rule only applies "'when inconsistency in a witness's testimony is unexplained and when neither version of his testimony is corroborated by other evidence.'" *Id.* (quoting *Caldwell*, 977 S.W.2d at 188).

Here, the Defendant cites three instances where the victim testified inconsistently with prior statements and to which he believes the rule of cancellation applies. The Defendant argues that the victim could not consistently explain how much change was stolen from his vehicle. However, the victim explained that his prior testimony that $40 or $50 in change was stolen was a "light guess" and that he was sure the amount was more than that. As a result, the victim explained the inconsistency, and the rule of cancellation does not apply. *Id.*; *Caldwell*, 977 S.W.2d at 188. Next, the Defendant argues that the victim could not give consistent testimony regarding whether one or both of his assailants had guns. At trial, the victim explained that he never saw the man who approached him from behind with a gun but that he believed the man did based on a statement the man made to the Defendant. Thus, the victim explained his testimony, and the rule of cancellation does not apply. *Id.*; *Caldwell*, 977 S.W.2d at 188. Moreover, whether the second assailant possessed a gun does not affect the sufficiency of the evidence regarding the Defendant's convictions, because the victim identified the

Defendant as the man who approached him from the front and who wielded a gun. The Defendant also complains that the victim testified that he identified a person with short hair in a photographic array but informed law enforcement in a statement that the man had short, curly dreadlocks. However, because the Defendant only cites a discrepancy between the victim's unsworn statement to law enforcement and his sworn trial testimony, the rule of cancellation does not apply. *See Id.* (stating that the rule of cancellation applies to contradictory sworn statements).

Finally, the Defendant's complaint that the evidence was merely circumstantial overlooks that circumstantial evidence alone or a combination of direct and substantial evidence is sufficient to support his convictions. *See Dorantes*, 331 S.W.3d at 379; *Matthews*, 805 S.W.2d at 779. Additionally, there was direct evidence that the victim observed the Defendant approach him from the front while wielding a gun and subsequently identified him in a photographic lineup as the robber and carjacker. Therefore, we conclude that the evidence was sufficient to support the Defendant's convictions for carjacking and aggravated robbery.

## II. Trial Court as the Thirteenth Juror

We briefly note that the Defendant included in his sufficiency argument a conclusory argument that the trial court failed to weigh the evidence by acting as the thirteenth juror in his trial. The Defendant did not cite to the legal standards relevant to his assertion that the trial court did not fulfill its role as thirteenth juror. Tennessee Rule of Criminal Procedure 33(d) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." This rule "'imposes upon a trial court judge the mandatory duty to serve as the thirteenth juror in every criminal case,'" and makes "'approval by the trial judge of the jury's verdict as the thirteenth juror . . . a necessary prerequisite to imposition of a valid judgment.'" *State v. Biggs*, 218 S.W.3d 643, 653 (Tenn. Crim. App. 2006) (quoting *State v. Carter*, 896 S.W.2d 119, 122 (Tenn. 1995)). Under this review, the trial court "'must weigh the evidence and grant a new trial if the evidence preponderates against the weight of the verdict.'" *Id.* (quoting *State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996)). A trial court's "inquiry into the weight is entirely different" from an inquiry into the sufficiency of the evidence because the trial court "does not have to view the evidence in the light most favorable to the prosecution; he may weigh the evidence himself as if he were a juror and determine for himself the credibility of the witnesses and the preponderance of the evidence." *State v. Ellis*, 453 S.W.3d 889, 899 (Tenn. 2015) (quoting *State v. Johnson*, 692 S.W.2d 412, 415 (Tenn. 1985)).

However, the Defendant's bare assertion that the trial court failed to act as the thirteenth juror in his case without citation to authority or the applicable standard of

review is not adequate to invite our review. *See* Tenn. R. App. P. 27(a)(7) ("The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities" and "for each issue, a concise statement of the applicable standard of review"); Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references will be treated as waived by this court.") Accordingly, the Defendant's argument regarding the trial court's failure to weigh the evidence as the thirteenth juror is waived. *See State v. Leath*, 461 S.W.3d 73, 115 (Tenn. Crim. App. 2013) (treating as waived the defendant's "one-sentence argument citing only to a news media article" that the trial court failed to act as the thirteenth juror).

### III. Admissibility of the Victim's Prior Photographic Identification

The Defendant argues that evidence of the victim's prior identification of him in a photographic lineup was inadmissible hearsay because the victim failed to identify him in court and he was not given an opportunity to cross-examine the victim about his prior identification. He contends that the trial court erred by allowing the State to admit the victim's prior identification as evidence. The State argues that the Defendant has waived his claim because he failed to object on these grounds at trial and did not raise his arguments in a motion for new trial. The State contends that this court should not engage in plain error review because the Defendant has not requested it, and it argues that the Defendant is not entitled to relief under plain error review. We agree with the State that this claim is waived, and we decline to review for plain error.

As discussed above, the Defendant objected to the admissibility of the photographic lineup on the grounds that there was no foundation for the questioning and that the evidence was hearsay because it contained an additional statement at the bottom of the page. In the Defendant's motion for new trial and amended motion for new trial, he argued that the victim's identification of him at trial was uncertain and that the jury would not have convicted him had it been excluded. Here, the Defendant abandons the arguments he made at trial and in his post-trial motions for new trial regarding the admissibility of the photographic lineup and, instead, asserts the novel allegation that the entire photographic identification was inadmissible hearsay because the victim initially failed to identify him at trial. "It is well-settled that a defendant may not advocate a different or novel position on appeal." *State v. Howard*, 504 S.W.3d 260, 277 (Tenn. 2016) (citing *State v. Leach*, 148 S.W.3d 42, 55 (Tenn. 2004)); *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App 1994) (stating that a defendant may not assert one ground for relief at trial and then pursue a new or different theory on appeal). The Defendant failed to raise this argument at trial or in his motions for new trial. Accordingly, the Defendant's claim is waived. Because the Defendant's arguments are waived and because he does not request plain error review, we decline to address this issue as plain error. *See State v. Nelson*, 275 S.W.3d 851, 864 (Tenn. Crim. App. 2008)

("Appellate courts are advised to use plain error sparingly in recognizing errors that have not been raised by the parties or have been waived due to a procedural default.") (citing *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007)).

## IV. Sentencing

The Defendant argues that the trial court abused its discretion by sentencing him to the maximum possible sentence for his convictions. As support, the Defendant contends that only the enhancement factor regarding his previous history of criminal behavior applied and that the trial court erroneously relied on the one applicable factor to impose the maximum sentence. He also contends that the trial court's application of the enhancement factor that the Defendant possessed or employed a firearm was erroneous because the jury acquitted him of using a firearm during the carjacking. He argues that the record suggests the trial court improperly considered the maximum sentence to be the default sentence. In response, the State argues that the trial court's findings supported its decision to sentence the Defendant to the maximum sentence within the sentencing range. The State argues that the trial court did not err in applying the firearm enhancement factor because, under the preponderance of the evidence, the trial court could have found that the Defendant used or possessed a gun during the commission of the carjacking.

The trial court held a sentencing hearing, during which no testimony was offered. The presentence report was entered as evidence to the sentencing hearing, and the trial court proceeded to make its findings on the record. The presentence report reflected that the Defendant had two aggravated burglary convictions from 2010 and convictions for reckless endangerment, attempted carjacking, theft of property, and aggravated burglary from 2014. The Defendant received a moderate score on his Strong-R assessment.

The trial court considered the record, the presentence report, the principles of sentencing, and the relevant sentencing factors. The trial court found that the Defendant was a Range II, multiple offender. The trial court reviewed the Defendant's criminal history and applied as an enhancement factor that the Defendant had a "previous history of criminal convictions or criminal behavior." *See* T.C.A § 40-35-114(1). The trial court found that the Defendant was not out on bond when he committed the underlying offenses, and it did not apply enhancement factor eight. *See* T.C.A. § 40-35-114(8). The trial court was uncertain about the applicability of enhancement factor thirteen, relating to whether the Defendant was on parole when he committed the offenses, and it did not apply that factor. *See* T.C.A. § 40-35-114(13). After the hearing and in its written findings of fact related to sentencing on the Defendant's carjacking conviction, the trial court marked that enhancement factor nine applied, that the Defendant "possessed or employed a firearm . . . during the commission of the offense." *See* T.C.A. § 40-35-

- 9 -

114(9). The Defendant conceded that he did not believe any mitigating factors were applicable, and the trial court did not apply any mitigating factors.

The trial court found that sentences of twenty years were appropriate considering the Defendant's extensive criminal history and the circumstances of his case. The trial court found that consecutive sentencing was not warranted under the circumstances and ordered the Defendant's sentences to be served concurrently.

This court reviews the length of a sentence for abuse of discretion, applying "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A sentence will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Once the trial court establishes the appropriate range of the sentence, the court must consider: the evidence, if any, received at the trial and the sentencing hearing; the presentence report; the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; evidence and information offered by the parties on mitigating and enhancement factors; any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; any statement the defendant makes on his own behalf as to sentencing; the result of the validated risk and needs assessment conducted by the department and contained in the sentencing report; and the potential for rehabilitation to determine the specific length of the sentence. T.C.A. §§ 40-35-103(5), -113, -114, -210(b)). The weight given to mitigating and enhancement factors is a decision "left to the trial court's sound discretion." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). Accordingly, "this court is not free to reevaluate the weight and value assigned to the factors found by the trial court." *State v. Edward Rudolph Wyse, Jr.*, No. E2019-01454-CCA-R3-CD, 2020 WL 6141011, at *13 (Tenn. Crim. App. Oct. 20, 2020), *no perm. app. filed*; *see Bise*, 380 S.W.3d at 699. A trial court's misapplication of an enhancement or mitigating factor does not result in an abuse of discretion "if 'there are other reasons consistent with the purposes and principles of sentencing'" for imposing the sentence. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016) (quoting *Bise*, 380 S.W.3d at 706).

Here, the trial court did not abuse its discretion in sentencing the Defendant. The trial court found that the Defendant was a Range II, multiple offender, and this finding is not challenged on appeal. The Defendant was convicted of carjacking and aggravated robbery, Class B felonies. T.C.A. § 39-13-402(b) (aggravated robbery), -404(b) (carjacking). The sentencing range for a Range II offender for a Class B felony is twelve to twenty years. T.C.A. § 40-35-112(b)(2). The trial court chose sentences in the

appropriate range when it sentenced the Defendant to twenty years for each of his convictions.

In terms of the enhancement factors, the trial court found that the Defendant had a "previous history of criminal convictions or criminal behavior" and that he "possessed or employed a firearm . . . during the commission of the offense." T.C.A. §§ 40-35-114(1), (9). The Defendant argues that the trial court erred in applying enhancement factor nine to the carjacking conviction because he had been acquitted of employing a firearm during the commission of or attempt to commit a dangerous felony. The trial court did not discuss the factor in its oral findings, and the finding only appears as a checkmark on a form completed as part of its written findings after the hearing. It is unclear whether the trial court relied on enhancement factor nine in its sentencing decision. The trial court imposed the exact same sentences of twenty years at the hearing, where it did not rely on the enhancement factor, as it did in its written order. Regardless, our courts have held that "a sentencing court may apply an enhancement factor based on facts underlying an offense for which the defendant has been acquitted, so long as the facts have been established in the record by a preponderance of the evidence." *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000); *see State v. Ryan Patrick Broadrick*, No. M2017-01136-CCA-R3-CD, 2018 WL 4203883, at *12 (Tenn. Crim. App. Sept. 4, 2018). The record established that the victim reported the Defendant to have approached him with a gun while he and another individual robbed the victim. After the victim's property was taken, the Defendant and the other individual stole the victim's vehicle and left the scene. Accordingly, the record supports the trial court's finding that the Defendant employed or possessed a firearm during the commission of a carjacking under the preponderance of the evidence standard. To the extent that the Defendant argues that the trial court gave undue weight to these enhancement factors, he is not entitled to relief. *See Carter*, 254 S.W.3d at 345; *Edward Rudolph Wyse, Jr.*, 2020 WL 6141011, at *13.

The Defendant also argues that the trial court failed to make the proper findings to support its decision; however, he fails to cite to any specific sentencing factors or principles the trial court failed to consider. Contrary to the Defendant's argument, the record reflects that the trial court considered the presentence report, the enhancement factors, the principles of sentencing, and the relevant sentencing factors. Further, there is no indication that the trial court presumed the maximum sentence to be the default sentence. Accordingly, we apply a presumption of reasonableness to the trial court's sentences, *see Bise*, 380 S.W.3d at 707, and we conclude that the Defendant has failed to show the trial court abused its discretion. The Defendant is not entitled to relief on this claim.

**CONCLUSION**

Based upon the foregoing reasons, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE